**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:12-cv-00125-MR**
**[Criminal Case No. 1:09-cr-00013-MR-9]**

| | | |
|---|---|---|
| **YVONNE MARIE FOUNTAIN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner Yvonne Fountain's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1]; Respondent's Motion for Summary Judgment, as corrected [Docs. 14; 15]; Petitioner's Motion for Evidentiary Hearing [Doc. 23]; Petitioner's Response to the Motion for Summary Judgment [Doc. 24]; and Petitioner's Motion to Amend/Correct Motion to Vacate [Docs. 25].

## FACTUAL BACKGROUND

In this motion to vacate, Petitioner Yvonne Marie Fountain seeks to vacate her conviction and sentence for conspiracy to possess with intent to distribute crack cocaine. Following an investigation that included wiretaps and the execution of two search warrants, Petitioner's co-defendant,

Kenneth Lee Foster, was initially charged by criminal complaint on February 6, 2009. [Criminal Case 1:09-cr-00013-MR-9, Doc. 1: Criminal Complaint]. Eleven days later, on February 17, 2009, the Grand Jury for the Western District of North Carolina indicted both Foster and Petitioner, as well as thirteen other defendants, charging Foster, Petitioner and Petitioner's boyfriend, Dennis Lamar Bruton, with conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); and using a communication facility in committing and in causing and facilitating the drug conspiracy, in violation of 21 U.S.C. § 843(b) (Count Two). [Id., Doc. 12: Indictment].

With respect to Petitioner's participation in the conspiracy, Asheville Police Department Detective Jeffrey Rollins testified that he and other officers began conducting surveillance of Petitioner's residence in the summer of 2007 and that officers later searched the trash from the residence that Petitioner shared with Bruton and found clear plastic bags with cocaine residue on them. [Id., Trial Tr. at 553-55]. In August 2008, while Detective Rollins was conducting surveillance of Petitioner's residence, he saw Petitioner leave her residence and get into a gray Infiniti parked outside of her home. [Id. at 558-59]. Petitioner sat in the car for approximately two minutes and then "exited the vehicle with a large amount

2

of U.S. currency in her left hand." [Id. at 559]. On that same date, Foster was seen by officers at Petitioner's and Bruton's residence. [Id. at 559-60].

Having learned that Foster's supply source would be delivering cocaine to Foster on February 5, 2009, officers obtained search warrants for Foster's residence and Petitioner's and Bruton's residence, executing both warrants on the night of February 5, following that delivery. [Id. at 398-99]. During the search of Foster's residence, agents seized large quantities of currency from Foster's jacket pockets, 31.7 grams of powder cocaine on the stove, half a kilogram of powder cocaine on top of the refrigerator, and four, individually wrapped bags containing a total of 156.6 grams of crack cocaine on the stove, among other items. [Id. at 399; 403; 607; 609-11; 614].

At approximately the same time officers were executing a search at Foster's residence, other officers searched the residence of Petitioner and Bruton. [Id. at 560]. During the search, agents conducted a forcible entry after unsuccessfully trying to gain entry upon request. [Id. at 562]. Numerous people were in the home, and when agents came to Petitioner's and Bruton's bedroom door, it was blocked. [Id.]. Officers ultimately gained entry to the bedroom. After noticing another door and kicking it open, officers saw Petitioner standing in her pajamas next to the toilet. [Id.

at 563-66]. Officers found approximately 76 grams of crack cocaine on the toilet seat, in the toilet, and on the floor beside the toilet. [Id. at 569-70; 619; 621-22]. Additionally, officers seized from the bedroom approximately $21,000 in cash and digital scales with cocaine residue. [Id. at 570-71]. Officers also seized a power bill in Petitioner's name. [Id. at 572].

Petitioner's case was tried before a jury, the Honorable Lacy H. Thornburg presiding.[1] Following the presentation of the Government's case, Petitioner moved for judgment of acquittal based on the insufficiency of the evidence. [Id. at 653-57; 759-60].[2] The Government opposed the motion as to Count One, but consented to the motion with respect to Count Two, agreeing that there was no evidence of Petitioner's use of a communication facility during commission of the drug conspiracy. [Id. at 655-56]. The Court denied Petitioner's motion with respect to Count One but granted the motion as to Count Two. [Id. at 655-56].

At the conclusion of four days of testimony, the jury found Petitioner guilty of the drug conspiracy offense. [Id., Doc. 297: Fountain Verdict].

---

[1] Following Judge Thornburg's retirement in 2009, this case was assigned to the undersigned.

[2] The docket report in Petitioner's criminal case is missing several volumes of the trial transcripts. Therefore, page numbers cited here are to the actual trial transcript as provided by the Government in its brief in support of the summary judgment motion, rather than to the docket number and page in the docket report in this case, as specific page numbers cannot be verified.

The jury also found that possession with intent to distribute more than 50 grams but less than 150 grams of crack cocaine was reasonably foreseeable to her as a member of the conspiracy. [Id. at 1-2].

Following the jury's verdict, the Probation Office prepared a Presentence Report ("PSR"). The probation officer calculated Petitioner's total offense level to be 30 and her criminal history category to be I. Based on this total offense level and criminal history category Petitioner's guidelines range would have been 97-121 months. [Id., Doc. 306 at 6; 11: PSR]. Petitioner, however, faced a statutory mandatory minimum term of imprisonment of 240 months in light of her prior felony drug trafficking conviction, for which the Government had given notice pursuant to 21 U.S.C. § 851. Therefore, her applicable guidelines range was the mandatory minimum of 240 months. U.S.S.G. § 5G1.1(b). This Court ultimately sentenced Petitioner to 240 months' imprisonment, the statutory mandatory minimum. [Id., Doc. 349: Judgment].

Petitioner appealed, arguing on appeal that the evidence was insufficient to support her conviction for participation in the charged conspiracy; that this Court abused its discretion in denying her motion to sever her trial from the trial of her co-defendants; and that the evidence did not support the jury's finding of a single conspiracy. The Fourth Circuit

affirmed this Court's judgment on March 14, 2011.  United States v. Fountain, 416 F. App'x 304 (4th Cir. 2011).  Petitioner then filed a petition for writ of certiorari with the Supreme Court, which petition was denied on October 17, 2011.  Fountain v. United States, 132 S.Ct. 218 (2011).

Eight months later, on June 4, 2012, Petitioner filed the original motion to vacate her conviction and sentence under 28 U.S.C. § 2255, asserting twenty-nine issues and five grounds for relief.  [Doc. 1].  On October 22, 2012, Petitioner filed a motion to amend her motion to vacate, stating that of the twenty-nine issues and five grounds for relief in her original motion to vacate, she had narrowed the motion to vacate to fourteen issues and two grounds for relief.  [Docs. 5; 6].

Specifically, Petitioner asserts as her two grounds for relief: (1) a claim for ineffective assistance of counsel and (2) a claim for a violation of her due process rights.  With respect to her ineffective assistance claim, Petitioner claims that counsel was ineffective in: (1) failing to explain the plea offer; (2) failing to inform Petitioner of the effect of a 21 U.S.C. § 851 notice; (3) failing to investigate and prepare exculpatory evidence, discovery materials, and defense; (4) failing to request a competency hearing; (5) failing to interview witnesses; (6) failing to challenge the jury pool; (7) representing her while operating under a conflict of interest; (8)

failing to present a defense as promised in his opening statement; (9) not allowing Petitioner to see the PSR; (10) failing to allow Petitioner to testify; (11) failing to properly cross-examine witnesses; (12) failing to seek disqualification of the judge; (13) failing to state legal reasons to support a downward departure; (14) failing to let Petitioner know that she was eligible for the safety valve; (15) failing to maintain contact with Petitioner; (16) accepting the Government's version of the case; and (17) failing to represent her adequately at the suppression hearing.  In support of her due process claim, Petitioner contends that: (1) evidence was obtained pursuant to an unreasonable search; (2) the Government failed to disclose exculpatory evidence; (3) the jury was improperly selected; (4) the defense was given insufficient time to prepare; and (5) the Court's finding of Petitioner's base offense level was incorrect.  [Doc. 5 at 7-8].  Petitioner also contends that the Government presented false evidence to the Court and to the grand jury in order to obtain an indictment against Petitioner. [Doc. 6 at 48].  As part of this claim, Petitioner contends that she was never part of the conspiracy and that all of the Government witnesses testified as such at Petitioner's trial.  [Id.].  Finally, Petitioner further claims that she is entitled to relief from the enhancement of her sentence under the Fourth Circuit's en banc decision in United States v. Simmons, 649 F.3d 237 (4th

Cir. 2011).  [Doc. 6 at 50].  In her response to the Government's summary judgment motion, Petitioner, however, appears to abandon all of her claims other than ineffective assistance, because she does not argue against the granting of summary judgment on these claims in her response to the Government's motion.  [Doc. 24].

On May 6, 2013, the Government filed the pending summary judgment motion.  [Doc. 14].[3]  In support of its summary judgment motion, the Government has submitted the affidavit of Petitioner's trial counsel, Sherlock Grigsby.  [Doc. 13-1: Grigsby Aff.].  On August 5, 2013, Petitioner filed an additional motion to amend/correct her motion to vacate, citing the United States Supreme Court's recent ruling in Alleyne v. United States, 133 S.Ct. 2151 (2013).

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

_____

3 The Government filed a corrected version of this motion the same day.  [Doc. 15].

Fed. R. Civ. P. 56(a). The rule further outlines the procedure for responding to a motion for summary judgment:

> (c) Procedures
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56).

## DISCUSSION

### I. Petitioner's Ineffective Assistance of Counsel Claims

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that she was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-92 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." Id. at 689.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to her "actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697).

In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

Counsel is presumed to be competent, and a petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption.

<u>Carpenter v. United States</u>, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. <u>Id.</u>

### A. Failure to explain plea offer and § 851 Notice.

Petitioner first asserts that trial counsel provided deficient representation in failing to explain the Government's plea offer to her and failing to explain, in particular, that the Government had filed a § 851 information and that if she proceeded to trial, she could receive a sentence of twenty years. First, the Court must examine the forecasts of evidence presented by the parties to determine whether there is any genuine issue as to any material fact. If there is, then an evidentiary hearing will be necessary and summary judgment is not available.

Petitioner's attorney, Sherlock Grigsby, provided an affidavit, which said in pertinent part:

> I explained the Government's plea offer in length with Ms. Fountain. I explained to her that were she to be convicted she would face a mandatory twenty-year sentence in light of her previous conviction and the Government's 851 notice. I made numerous trips from DC to Asheville in order to visit Ms. Fountain personally. I personally advised Ms. Fountain of the Government's 851 notice and discussed in detail with her the facts of her previous conviction. I explained to her that per the terms of the Government's plea offer the government would withdraw the 851 notice if she were to accept the plea offer. I explained to her that per the plea offer she would face a mandatory minimum of ten years

rather than the potential twenty years if she were to be convicted. I explained this in detail on every visit with Ms. Fountain. On at least one occasion Attorney Kevin McCants was present when I discussed Ms. Fountain's legal options.

[Doc. 13-1 at 1].

The only forecast of evidence the Petitioner offers in rebuttal comes in her affidavit, in which she says as to this issue, "My attorney Sherlock Grigsby never explained to me what a plea was. He offered me no advice and that's why I broke down crying. I did not understand the proceedings against me." [Doc. 24-1 at 1]. Curiously, Petitioner then shifts to speaking of herself in the third person and states: "Petitioner recalls her counsel telling her that they [were] not going to use [the] prior against her, and that's all she remembers."[4] [Id.].

As such, the only thing Petitioner states she remembers her attorney telling her about the plea agreement that was offered was the one most salient point: if Petitioner accepted the agreement her prior conviction (and hence the § 851 Notice) would not be used against her. She admits she understood little else, and may even not have understood the importance of

---

[4] Petitioner makes many arguments in her response to the government's motion for summary judgment, [Doc. 24], but she provided a forecast of evidence consisting only of two short affidavits. [Docs. 24-1, 24-2]. This is notwithstanding the Court having provided her with specific notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of her need to confront the summary judgment motion with proper affidavits. [Doc. 22 at 3-7].

the offered withdrawal of the § 851 Notice. That, however, does not address whether counsel had failed to meet the <u>Strickland</u> objective standard.

The Grigbsy affidavit remains, for all intents and purposes, unrebutted. It shows that counsel's conduct was well within the range of reasonable professional assistance. In fact, Petitioner points to no defect in Grigsby's conduct. Her affidavit merely reflects that she did not fully understand his explanation. The <u>Strickland</u> standard, however, is an objective one. It does not look to the client's subjective understanding, but rather to the attorney's actions. Petitioner presents no forecast of evidence that Grigsby's counsel regarding the proposed plea agreement and the effects of the § 851 Notice failed to meet that standard.

**B. Failure to investigate available defenses and failure to interview witnesses.**

Petitioner next argues that trial counsel failed to investigate the case against her, in particular failing to interview Dennis Bruton, failing to visit her house to discover how the police entered her home and how big her bathroom was, and failing to interview family members. Petitioner, however, presents no forecast of evidence to support this argument. Petitioner's own affidavit is silent on these issues. She provides an affidavit of Dennis Bruton, but it, too, is silent on the issue of whether Grigsby

interviewed him.

Mr. Grigsby, however, explains in his affidavit that he "personally interviewed Dennis Bruton multiple times after [Bruton's] Attorney gave [Grigsby] permission to speak with [Bruton], as well as other members of [Petitioner's] family, including her father, her sister, and granddaughter." [Doc. 13-1 at 1]. Mr. Grigsby states that, after speaking with Mr. Bruton, he considered calling him as a witness, but that "[a]fter considering the potential credibility issues and after observing the government's witnesses and evidence at trial, [he] made the strategic decision not to call Mr. Bruton as a witness." [Id.]. Mr. Grigsby's strategic decision not to call Bruton as a witness was well within the wide range of reasonable professional assistance allowed under Strickland. See Strickland, 466 U.S. at 689. Mr. Grigsby's affidavit also establishes that he interviewed members of Petitioner's family, notwithstanding her unsworn assertions to the contrary. Even if Petitioner's allegations were taken as true that Grigsby failed to conduct these interviews, Petitioner has failed to show any prejudice. She has identified nothing that these individuals could have offered that would have refuted the fact that Petitioner was apprehended in her bathroom attempting to flush a significant quantity of crack cocaine down the toilet.

### C.     Failure to request a competency hearing.

Petitioner also asserts that trial counsel improperly failed to request a competency hearing, given her lack of understanding of her case.    In support of this point Petitioner argues that she did not file her own motion to vacate, relying instead on a "jail house lawyer" to do so.  As Respondent notes, many *pro se* litigants use "jailhouse lawyers" to assist them, and Petitioner's decision to do so does not support her assertion that she was incompetent to stand trial.   Additionally, in response to this allegation, Mr. Grigsby states he "did not observe anything that would lead [him] to independently request a competency hearing."    [Doc. 13-1 at 2].    Mr. Grigsby also makes clear, as set forth above, that he did meet with Petitioner's family, yet he still never believed a competency hearing to be warranted.    Without any indication that a competency hearing was warranted, Petitioner has shown neither deficient representation nor prejudice.

### D.     Failure to challenge the jury venire.

Petitioner next alleges that trial counsel failed to challenge the lack of African-Americans on the jury venire.[5]   Petitioner acknowledges, however,

---

[5]  Petitioner does not argue this claim in response to the Government's summary judgment motion; thus, in addition to the fact that the claim is without merit, Petitioner has abandoned this claim.

that no African-Americans were ever presented as potential jurors. Petitioner has not alleged any facts suggesting that Mr. Grigsby had the opportunity but failed to secure the presence of African-Americans on the jury. In addition, Petitioner cannot show prejudice, where the evidence of her guilt was strong, and she cannot show that African-American jurors would have been likely to vote to acquit her.

### E. Conflict of Interest.

Noting the friendship between Mr. Grigsby and Mr. Bruton's trial counsel, Kevin McCants, Petitioner next alleges that throughout his representation of Petitioner, Mr. Grigsby acted under a conflict of interest, as evidenced by Mr. Grigsby's failure to call Mr. Bruton as a witness. Although Mr. Grigsby acknowledges in his affidavit that he is friends with Mr. McCants, he states unequivocally that this friendship "in no way impacted [his] decision on whether or not to call Mr. Bruton as a witness," explaining again that he did not believe that calling Mr. Bruton as a witness would have helped Petitioner and that he made the strategic decision not to do so. [Doc. 13-1 at 2]. Given that Petitioner cites no other support for her assertion that Mr. Grigsby operated under a conflict of interest, this claim, too, fails.

**F.     Failure to present defense promised in opening statement.**

In another claim related to the failure to call Mr. Bruton as a witness, Petitioner argues that Mr. Grigsby improperly failed to call Mr. Bruton as a witness, even though in his opening statement he told the jury that they would hear testimony from Bruton.   Here, even though Mr. Grigsby may have initially planned to call Mr. Bruton as a witness, his ultimate decision not to call Mr. Bruton as a witness was reasonable, having been based on the presentation of the Government's evidence and Grigsby's assessment of the impact of that testimony.   Finally, as with Petitioner's other claims of ineffective assistance of counsel, she presents nothing that would show Strickland prejudice.

**G.     Failure to permit review of PSR**.

Petitioner next argues that trial counsel failed to permit her to review her Presentence Report.  In his affidavit, Mr. Grigsby refutes that assertion, stating that although he had little time to respond to the PSR on Petitioner's behalf, he traveled to Asheville and met with Petitioner, specifically to review and discuss the PSR with her before her sentencing proceeding. [Doc. 13-1 at 2].  Mr. Grigsby states that he did not leave a copy with Petitioner, but that he did review and discuss the PSR at length with Petitioner.   [Id.].   Because of safety concerns related to information

frequently contained in PSRs, Mr. Grigsby's decision not to leave the PSR with Petitioner is consistent with a Bureau of Prisons regulation preventing possession of PSRs by prisoners. In any event, Mr. Grigsby's affidavit establishes that he reviewed the substance of the PSR with Petitioner. Additionally, although Petitioner argues that she might not have been found guilty if she had reviewed the PSR, this claim has no merit because the PSR was not prepared until after she was convicted and could not have affected its result. Petitioner has shown neither deficient performance nor prejudice by Mr. Grigsby.

### H.     Failure to permit Petitioner to testify.

Asserting that Mr. Grigsby did not "let her testify," Petitioner next claims that counsel was ineffective because her testimony might have altered the jury's verdict. Mr. Grigsby states unequivocally in his affidavit, however, that Petitioner "did not want to take the stand." [Doc. 13-1 at 2]. Although this Court did not conduct an inquiry into Petitioner's decision not to testify, she was present when that inquiry was made of both of her co-defendants, and Petitioner did not at any time state that she wished to testify.

Moreover, the evidence presented at trial was that Petitioner was apprehended in her bathroom with a substantial quantity of crack cocaine

in her possession, in circumstances indicating she was trying to flush the drugs down the toilet. Petitioner does not explain how her testimony would likely have overcome this evidence and caused a reasonable probability that the jury would have acquitted her. Petitioner does not even attempt to make a proffer of what her testimony would have been. As such, Petitioner cannot meet the prejudice prong of <u>Strickland</u>.

## I.  Failure to conduct adequate cross-examination.

In the same section in which she asserts that Mr. Grigsby did not permit her to testify, Petitioner also asserts that Mr. Grigsby failed adequately to cross-examine the Government's witnesses against her. For instance, she suggests he should have asked why they were testifying against her if they never knew her to be a part of the charged conspiracy, whether she was ever present during a drug transaction, whether Mr. Bruton lived with her, and whether Mr. Bruton had engaged in drug transactions out of her home. [Doc. 6 at 37]. Petitioner does not identify any witnesses who testified against her who were not adequately cross-examined. Furthermore, while the Government's case against Kenneth Foster included the testimony of numerous co-conspirators, the Government's witnesses against Petitioner were all law enforcement witnesses. The primary witness providing testimony against Petitioner was

Asheville Police Department Detective Jeffrey Rollins, who testified to pulling trash from her residence and finding clear plastic bags with cocaine residue on them, to conducting surveillance of Petitioner's residence and witnessing what appeared to be a drug transaction, and searching Petitioner's residence whereupon officers found Petitioner in her bathroom, apparently trying to get rid of crack cocaine, of which 76 grams still remained at the time she was caught.  [See Criminal Case 1:09-cr-13-MR-9, Trial Tr. at 438-57].  Mr. Grigsby cross-examined Detective Rollins extensively, and there was no witness who testified to specific transactions with Petitioner who would have merited the type of cross-examination Petitioner suggests should have been presented.  [Id. at 458-75].  Finally, Petitioner cannot show that more extensive cross-examination of any witness was likely to result in her acquittal.

### J.    Failure to argue in favor of a downward departure, and failure to discuss safety-valve eligibility with Petitioner.

Next, Petitioner presents two claims of ineffective assistance of counsel related to sentencing.  First, Petitioner asserts that Mr. Grigsby improperly failed to argue in favor of a downward departure below the statutory mandatory minimum.  Second, Petitioner asserts that counsel failed to explain her eligibility for relief from the mandatory minimum under the safety valve.  Both of these claims fail.  First, with respect to counsel's

failure to file a motion for downward departure, the only motion for downward departure that would have enabled this Court to sentence Petitioner below the 240-month mandatory minimum would have been a motion based on Petitioner's having provided the Government substantial assistance, filed under 18 U.S.C. § 3553(e). Thus, no motion filed by Petitioner would have provided this Court with the authority to depart below the mandatory minimum, and Mr. Grigsby did not provide deficient representation in failing to file a futile motion. Additionally, Mr. Grigsby makes clear in his affidavit that Petitioner "insisted she knew nothing about the alleged conspiracy nor did she want to speak with the Government." [Doc. 13-1 at 3]. As Petitioner was not interested in assisting the Government, and she claims she was unable to assist the Government, it is not surprising that the Government did not file a motion for downward departure based on her substantial assistance.

Turning to her claim that Mr. Grigsby never advised her of the availability of relief under the safety valve, Mr. Grigsby acknowledges in his affidavit that he does not recall specifically discussing the safety valve with Petitioner. [Id.]. However, Mr. Grigsby states that he advised Petitioner "that providing all known information to the Government could help her." [Id.]. As noted above, Petitioner insisted that she did not know anything

about the alleged conspiracy and did not want to speak to the Government, notwithstanding Mr. Grigsby's advice to her that providing information to the Government could help her. Accordingly, she cannot show that, even if Mr. Grigsby failed specifically to discuss safety-valve relief with her, there is a reasonable probability that she would have admitted her involvement in the conspiracy and provided truthful and complete assistance. See U.S.S.G. § 5C1.2(a)(2) (requiring that the defendant, no later than the sentencing hearing, has truthfully provided the Government with all information and evidence concerning the offense or offenses). Petitioner, therefore, has not shown either deficient representation or prejudice as to these sentencing-related claims of ineffective assistance of counsel.

## K. Failure to communicate issues for appeal.

In her final claim of ineffective assistance of counsel against Mr. Grigsby, Petitioner claims that he failed to communicate with her about her appeal, notwithstanding her and her family's attempts to contact him. Petitioner asserts that if Mr. Grigsby had communicated with her, "she could have addressed the fact that Dennis Lamar Bruton did not live with her and his name was not on the lease," and that she would have asked Grigsby "to make an issue out of the fact that she was indicted and somehow linked to the conspiracy through 4 phone calls made to and from

Ken Foster about playing gambling tickets." [Doc. 6 at 45]. Neither of these issues, however, concerns a claim that could properly be made on appeal. These arguments are in the nature of challenging the findings of fact made by the jury by arguing new facts, arguments that are not cognizable on appeal, when the record is limited to the record before this Court. Additionally, even if Mr. Bruton did not live with Petitioner and even if his name was not on Petitioner's lease, he was present when Petitioner's residence was searched at approximately 9:00 p.m. on February 4, 2009, he was blocking the door at the time the officers finally gained entry into Petitioner's bedroom, and Petitioner was present and apparently attempting to flush more than 76 grams of crack down the toilet. [See Criminal Case 1:09-cr-13-MR-9, Trial Tr. at 560-70]. This evidence would not have exonerated Petitioner; therefore, it is unlikely any argument made on appeal based on facts supporting these statements would have succeeded.

With respect to the four phone calls that were recorded between Petitioner and Mr. Foster, a law enforcement witness testified at trial that the only phone calls between Petitioner and Mr. Foster appeared to relate to gambling and were not related to drug-trafficking. That a Government witness acknowledged during Petitioner's trial that none of the four phone calls between Petitioner and Mr. Foster was related to drug-trafficking also

refutes Petitioner's argument that trial counsel should have admitted the recordings of these phone calls to establish their lack of connection to the charged conspiracy.  Presenting this evidence on appeal, then, also would not have assisted Petitioner.  Because Petitioner has not suggested any argument on appeal that was likely to succeed, she has not shown either deficient representation or prejudice with respect to Mr. Grigsby's appellate representation of her.

### L.    Failure to provide adequate notice of suppression hearing.

Petitioner also challenges the representation by former counsel, Jack Stewart, who represented Petitioner during a hearing on her motion to suppress the evidence seized during the search of her home.  Specifically, Petitioner asserts that she was not given adequate notice of the hearing and that Mr. Stewart told Petitioner to be quiet and not say anything, precluding her from explaining that Mr. Bruton was not on her lease or giving "her version of the facts."  [Doc. 6 at 47].  With respect to her version of the facts, Petitioner asserts that she was asleep when the officers arrived to search her home, she ran to the bathroom because she was afraid, the police never showed Petitioner any drugs seized from her house, and her home was searched when she was not there.  In support of the legality of the search of Petitioner's home, however, the Government

presented a copy of the search warrant, and none of the facts cited by Petitioner calls into question the legality of the search warrant relied on by officers in searching her home or the good-faith reliance on that warrant by the officers who conducted the search. Petitioner has not shown either deficient performance or prejudice, therefore, as to Mr. Stewart's representation related to her motion to suppress.

## II. Petitioner's **Simmons** Claim

Next, to the extent that Petitioner has not abandoned this claim by failing to raise it in response to the Government's summary judgment motion, Petitioner's Simmons claim fails as a matter of law because Petitioner was previously convicted of selling a Schedule II controlled substance, an offense for which she was sentenced to 13 to 16 months in prison — an offense that is, by definition, punishable by more than one year in prison. [See Criminal Case 1:09-cr-00013-MR-9, Doc. 306 at 8: PSR]. Therefore, Petitioner is not entitled to relief under Simmons.

## III. Petitioner's Motion to Amend to Assert an **Alleyne** Claim

Finally, in a motion to amend her motion to vacate, Petitioner claims that she is entitled to relief in light of the Supreme Court's recent decision in Alleyne v. United States. At the time of Petitioner's sentencing either a judge or jury could decide whether a defendant's conduct met the

requirements for a mandatory minimum sentence. See Harris v. United States, 536 U.S. 545 (2002). In Alleyne, the Supreme Court overruled Harris, holding that a judge cannot make this decision unless the defendant waives his right to a jury trial. Petitioner contends that, in light of Alleyne, she was erroneously given a sentence enhancement under 21 U.S.C. § 851 based on her prior drug conviction.

Petitioner's motion to amend will be denied. The amendment of a motion filed under Section 2255 is governed by Rule 15 of the Federal Rules of Civil Procedure. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Here, Petitioner filed her motion to amend more than one year after her judgment became final. Thus, Petitioner's motion to amend is untimely under the one-year statute of limitations set forth in Section 2255(f). An otherwise untimely amendment, however, may relate back to the date of the original Section 2255 motion if the newly asserted claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed R. Civ. P. 15(c)(2). In order for this Court to find that an otherwise untimely claim relates back, the proposed amended claim must arise from the "same core facts," and the claim may not be dependent on events that are separate both in time and in the substance of the facts upon which the original claims depended. See

Mayle v. Felix, 545 U.S. 644, 655-57 (2005).  Here, Petitioner's proposed amended claim does not arise out of the "same core facts" as asserted in her original petition.

Section 2255(f)(3) provides an exception to the one-year statute of limitations for claims based on a right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  A claim based on Alleyne does not qualify under this exception.  See Simpson v. United States, No. 13-2373, 2013 WL 3455876, at *1 (7th Cir. July 10, 2013).  That is, the Supreme Court has not held that Alleyne is retroactively applicable to cases on collateral review.  In sum, Petitioner's motion to amend is untimely.[6]

---

[6]In any event, even if the motion to amend were timely, Petitioner would still not be entitled to relief under Alleyne.  Petitioner complains that her prior drug conviction was never presented to the jury for purposes of the Section 851 enhancement.  In Almendarez–Torres v. United States, 523 U.S. 224 (1998), the Supreme Court held that, for sentencing enhancement purposes, a defendant's prior conviction does not have to be alleged in the indictment or submitted to a jury and proven beyond a reasonable doubt.  523 U.S. 224, 226-27.  Significantly, Alleyne did not overrule Almendarez–Torres.  See Alleyne, 133 S.Ct. at 2160 n.1 (noting that "[i]n Almendarez–Torres . . ., we recognized a narrow exception to this general rule for the fact of a prior conviction.  Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today.").

## CONCLUSION

For the reasons stated herein, the Court finds that Petitioner's claims in her Section 2255 motion are without merit and the Court will, therefore, grant summary judgment to Respondent.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. <u>See generally</u> 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (<u>citing</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000). As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1.    Respondent's Motion for Summary Judgment, as corrected [Docs.

14, 15] is **GRANTED**;

2.    Petitioner's Motion for Evidentiary Hearing [Doc. 23] is **DENIED**; and

3.    Petitioner's Motion to Amend/Correct Motion to Vacate [Doc. 25] is

**DENIED**.

4.    Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED;**

5.    The Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 20, 2014

Martin Reidinger
United States District Judge